## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

───────────────────

STATE OF NEW MEXICO, *ex rel.*,
MARCO WHITE, MARK MITCHELL, and
LESLIE LAKIND,

       Plaintiffs,

   vs.                                        No. 22-CV-284

COUY GRIFFIN,

       Defendant.

### MEMORANDUM OPINION AND ORDER
### GRANTING PLAINTIFFS' MOTION TO REMAND

**THIS MATTER** comes before the Court following Plaintiffs' Motion to Remand for lack of subject matter jurisdiction. *See* Doc. 10. Specifically, Plaintiffs argue this case does not belong in federal court for two independent reasons: (1) Plaintiffs lack Article III standing, and (2) the Complaint does not invoke a federal question. Having carefully reviewed the pleadings and the applicable law, the Court agrees with Plaintiffs on the first point and thus refrains from ruling on the second. For the reasons stated below, the Motion to Remand is hereby **GRANTED**.

### BACKGROUND

About three months ago, three New Mexico residents ("Plaintiffs") filed this action in state court against Couy Griffin ("Defendant"). Invoking New Mexico's *quo warranto* statute[1] and

─────────────────

[1] In relevant part, the statute reads:

    An action may be brought by the attorney general or district attorney in the name of the state, upon his information or upon the complaint of any private person, against the parties offending in the following cases:

Section Three of the Fourteenth Amendment,[2] Plaintiffs argue that Defendant's participation in the January 6, 2021, events that transpired at the U.S. Capitol disqualify Defendant from holding office as Otero County Commissioner.[3] Defendant timely removed this action to federal court, claiming that Plaintiffs' numerous references to the Fourteenth Amendment pose a federal question. Three days later, Plaintiffs filed the instant Motion to Remand for lack of subject matter jurisdiction based on (1) Plaintiffs' lack of Article III standing and (2) the absence of a federal question. For the reasons stated below, the Court finds that Plaintiffs lack standing to bring this lawsuit in federal court. Therefore, the Court does not reach the separate issue of whether the Plaintiffs' Complaint implicates federal question jurisdiction.

## LEGAL STANDARD

"[S]tatutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed in light of [federal courts'] constitutional role as limited

---

A.   when any person shall usurp, intrude into or unlawfully hold or exercise any office, civil or military, or any franchise within this state, or any office or offices in a corporation created by authority of this state; or,

B.   when any public officer, civil or military, shall have done or suffered an act which, by the provisions of law, shall work a forfeiture of his office . . .

When the attorney general or district attorney refuses to act, or when the office usurped pertains to a county, incorporated village, town or city, or school district, such action may be brought in the name of the state by a private person on his own complaint.

NMSA 1978 § 44-3-4.

[2] Section Three reads: "No person shall be a Senator or Representative in Congress, or elector of President and Vice-President, or hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath, as a member of Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof. But Congress may by a vote of two-thirds of each House, remove such disability." U.S. Const. amend XIV, § 3.

[3] The Court is referring to the series of events that occurred when protestors and rioters stormed the U.S. Capitol while Congress was in session to formally count the electoral votes from the 2020 Presidential Election, thereby certifying the victory of President Joe Biden.

tribunals." *Pritchett v. Office Depot, Inc.*, 420 F.3d 1090, 1094–95 (10th Cir. 2005); *Fajen v. Foundation Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982) ("Removal statutes are to be strictly construed, and all doubts are to be resolved against removal."). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded." 28 U.S.C. § 1447(c) (emphasis added). "Since federal courts are courts of limited jurisdiction, we presume no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction." *Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013).

This motion boils down to whether Plaintiffs have "standing" to bring this action in federal court. To establish standing, Defendant as the removing party must prove by a preponderance of the evidence that Plaintiffs in the Complaint allege (1) an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Importantly, the injury in fact must be (1) "concrete," not "abstract," (2) "particularized," not "generalized," and (3) "actual or imminent, not conjectural or hypothetical." *Id.* at 339 (quotations omitted).

## ANALYSIS

As New Mexico residents seeking to enforce state law, Plaintiffs have not suffered an individualized injury capable of satisfying the injury-in-fact prong. Recognizing this, Defendant argues that Plaintiffs satisfy a narrow exception referred to as "relator" standing outlined in *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765 (2000). In *Vermont Agency*, the Supreme Court relevantly held that *qui tam* relators[4] bringing claims under the False Claims Act ("FCA") enjoy Article III standing even though they assert injury only to the United States. *Id.* at

---

[4] For context, a *qui tam* statute permits private plaintiffs, referred to as "relators," "to sue in the government's name for the violation of a public right." *Spokeo*, 578 U.S. at 345 n.* (Thomas, J., concurring).

778. More specifically, the Court held that a non-injured relator has standing when the statute "effect[ed] a partial assignment of the Government's damages claim." *Id.* at 773.

Thus, Defendant likens Plaintiffs' *quo warranto* claim to a *qui tam* action capable of bypassing the injury-in-fact requirement. Defendant broadly argues that via the *quo warranto* statute, New Mexico "assigned" to Plaintiffs the right to disqualify Defendant as Otero County Commissioner. To the Court's knowledge, however, no federal court has ever applied *Vermont Agency*'s narrow exception to a *quo warranto* claim.[5] Therefore, the Court notes at the outset that Defendant faces a steep uphill battle, given the novelty of his argument combined with the Court's duty to resolve all doubts in favor of remand.

The Court rejects Defendant's argument in the following manner. First, the Court distinguishes the instant action from *Vermont Agency* on two independent bases. *See Magadia v. Wal-Mart Associates, Inc.*, 999 F.3d 668, 675 (9th Cir. 2021) ("A purported *qui tam* statute must hew closely to the traditional scope of a *qui tam* action for an uninjured plaintiff to maintain suit under Article III."). Those bases include the fact that (1) New Mexico *fully* (not partially) assigned (2) its *sovereign* (not proprietary) injury to Plaintiffs. Then, the Court explains how Plaintiffs fail to serve as "agents" of New Mexico and, finally, why recent Supreme Court case law forecloses Defendant's overall argument.

I.   **The *quo warranto* statute does not assign the proper remedy to qualify Plaintiffs for *Vermont Agency* relator standing.**

*Vermont Agency* opined that *qui tam* lawsuits generally involve two types of injuries: sovereign (a violation of law) and proprietary (usually damages). Defendant argues both injuries

---

[5] To the contrary, federal courts have uniformly required *quo warranto* plaintiffs to demonstrate a particularized injury sufficient to satisfy Article III without hinting they could assert any governmentally assigned injury. *Wynn ex rel. Alabama v. Phillip Morris*, 51 F.Supp.2d 1232, 1248 (N.D. Ala. 1999); *Sibley v. Obama*, No. 12-5198, 2012 WL 6603088 (D.C. Cir. Dec. 6, 2012) (unpublished).

entitle Plaintiffs to standing here. Starting with the former, Defendant first claims that New Mexico suffered a sovereign injury when Defendant allegedly usurped his position as County Commissioner—contrary to the *quo warranto* statute and the Fourteenth Amendment. This alone, Defendant asserts, establishes Plaintiffs' relator standing.

The Court disagrees. *Vermont Agency* did not recognize sovereign injury as a basis on which relators could establish an injury-in-fact. Instead, it held that the government's *proprietary* interest was all that could be assigned to a *qui tam* relator to confer standing. *Vermont Agency*, 529 U.S. at 773; *Hollingsworth v. Perry*, 570 U.S. 693, 711 (2013) (citing *Vermont Agency* as applying to Government damages claims); *U.S. ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1174 (10th Cir. 2009) (Briscoe, J., concurring) (same); *Magadia*, 999 F.3d at 675 ("Also consistent with traditional *qui tam* actions, [the state statute at issue] requires private-party plaintiffs to 'share a monetary judgment[,] . . . with the government receiving the lion's share.'") (citation omitted); *Spokeo, Inc. v. Robins*, 578 U.S. at 343–48 (Thomas, J., concurring) (explaining how private citizens have historically never had the ability to sue for sovereign injuries absent some showing of individualized harm).

Second, Defendant asserts that this case involves proprietary injury in that if Plaintiffs prove that Defendant usurped his county office, a money judgment must be entered against Defendant for the "fees and emoluments" he earned from said office.[6] Furthermore, the prevailing party is entitled to recover costs at the conclusion of litigation. *See* NMSA 1978 § 44-3-11.

---

[6] Plaintiffs cite two provisions in the *quo warranto* statute discussing fees and emoluments, as well as the requirement to include the name of the person rightfully entitled to the usurped office. *See* NMSA 1978 §§ 44-3-6, 44-3-9. A plain reading of the statute, however, confirms that Plaintiffs need not invoke these unrelated provisions to achieve the injunctive and declaratory relief they seek in this litigation. Moreover, invocation of such provisions are insufficient to establish that New Mexico assigned a proprietary remedy *to Plaintiffs*.

According to Defendant, these factors establish some notion of financial recovery as originally articulated by the Supreme Court in *Vermont Agency*.

The Court again disagrees. As an initial matter, Plaintiffs bring their action under the "forfeiture" provision of New Mexico's *quo warranto* statute to disqualify Defendant from county office. *See* NMSA 1978 § 44-3-4. Only a plaintiff claiming entitlement to the usurped office—clearly not Plaintiffs here—is entitled to recover fees and emoluments from Defendant. *See* NMSA 1978 § 44-3-6. In other words, the statute doesn't assign to Plaintiffs any form of monetary recovery, excluding recovery of costs under NMSA 1978 § 44-3-11. *See Vermont Agency*, 529 US at 773 ("[A] plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit."). Not only does the statute preclude Plaintiffs from recovering damages; Plaintiffs have expressly stipulated that they do not seek any form of monetary remedy—only declaratory and injunctive relief disqualifying Defendant from public office. *See* Doc. 25. Therefore, Defendant has failed to establish that the Complaint asserts and seeks redress for a financial governmental injury allegedly assigned to them.

For these reasons, the Court finds that Defendant has failed to establish assignment of the proper remedy associated with traditional *qui tam* actions. This finding serves as an independent basis distinguishing the instant *quo warranto* action from *qui tam* actions. *Hollingsworth v. Perry*, 570 U.S. at 711 (finding *Vermont Agency* distinguishable because it involved a partial assignment of the Government's *damages* claim).[7]

## II.    The *quo warranto* statute does not provide the proper "assignment" to qualify Plaintiffs for *Vermont Agency* relator standing.

---

[7] Citing *Sprint Communications Co., L.P. v. APCC Servs., Inc.*, Defendant also argues that Plaintiffs need not establish a direct "personal stake" in this litigation. 554 U.S. 269 (2008). The Court, however, finds that case distinguishable; it held that valid assignees do not lose standing when they contract "to remit the litigation proceeds" to a third party after the assignees receive them. *Id.* at 285–87. That case did not involve a question regarding the validity of the assignment in the first place, nor was there a dispute whether the assignees actually sought money owed to the assignors.

To qualify for relator standing, the relevant statute must also *partially*—not fully—assign the propriety remedy to the relator. *Id.* (referencing *Vermont Agency* as based on a *partial* assignment of Government's damages claim); *Magadia v. Wal-Mart Associates, Inc.*, 999 F.3d 668, 677 ("[A] traditional *qui tam* action acts only as a '*partial* assignment' of the Government's claim.") (citing *Vermont Agency*, 529 U.S. at 773). As such, a partial assignment generally means that the "government remains the real party in interest throughout the litigation and 'may take complete control of the case if it wishes.'" *Id.* at 677 (cleaned up). For example, under the FCA— the quintessential partial assignment statute—the federal government may intervene in the litigation, can settle over the objections of the relator, and must give its consent before the relator can have the case dismissed. 31 U.S.C. § 3730 (b)–(f). On the other hand, full assignment generally refers to the full relinquishment of a claim to another party.[8] Relevantly, Defendant argues that New Mexico partially assigned the *quo warranto* action to Plaintiffs in a manner consistent with *Vermont Agency*.

The Court disagrees. Importantly, the *quo warranto* statute mandates no role whatsoever for the State of New Mexico in this litigation. Because this case involves a *County* Commissioner, Plaintiffs were not required to wait for the attorney general or district attorney to file a complaint before filing suit. Further, New Mexico retains no mechanism for controlling the litigation, intervening in the lawsuit, or objecting to a settlement or dismissal. Nor does the statute limit the binding nature of any final judgment as it pertains to New Mexico. Much unlike the FCA, the *quo warranto* statute "lacks the 'procedural controls' necessary to ensure that [New Mexico]—not the

---

[8] *See also* Myriam E. Gilles, *Representational Standing: U.S. ex rel. Stevens and the Future of Public Law Litigation*, 89 Calif. L. Rev. 315, 346 (2001) ("It is likely that full assignment of proprietary claims by the government, under a legislative regime which prohibits the Executive from intervening or exercising any control over assigned claims, would violate separation of powers.").

[private plaintiff] . . . retains 'substantial authority' over the case." *Magadia*, 999 F.3d at 677 (holding that a state statute constituted a full assignment because it lacked similar features). This also serves as an independent basis for distinguishing *Vermont Agency* from the instant action.

## III.    Defendant's agency argument fails to establish standing.

Related to but distinct from his arguments above, Defendant asserts that Plaintiffs' status as New Mexico agents confers Plaintiffs standing. Defendant argues that because Plaintiffs assert the Complaint in the name of New Mexico, Plaintiffs owe New Mexico statutory and common law obligations consistent with agency law. Defendant cites a number of fiduciary relationships—including trustees, guardians ad litem, receivers, and assignees in bankruptcy litigation—in claiming that the same duties extend to Plaintiffs' management of this litigation. In return, Plaintiffs will supposedly receive "general political goodwill" and financial donations for their efforts. This argument fails for two reasons.

First, the *quo warranto* statute assigns Plaintiffs an interest in this lawsuit. Justice Antonin Scalia writing for the majority opined in *Vermont Agency* that the respondent could not be considered an agent of the government because the FCA "gives the relator himself an interest *in the lawsuit*, and not merely the right to retain a fee out of the recovery." *Vermont Agency*, 529 U.S. at 772. The same principle applies here. Because the statute assigns Plaintiffs an interest in this litigation, just as in *Vermont Agency*, it does not necessarily follow that Plaintiffs' interest is that of an agent acting on behalf of a principal.

Relatedly, "the most basic features of an agency relationship are missing here." *Hollingsworth*, 570 U.S. at 713. Contrary to Defendant's assertion,

> Agency requires more than mere authorization to assert a particular interest. 'An essential element of agency is the principal's right to control the agent's actions.' Yet [Plaintiffs] answer to no one; they decide for themselves, with no review, what arguments to make and how to make them. Unlike [New Mexico]'s attorney

general, they are not elected at regular intervals—or elected at all. . ... They are free to pursue a purely ideological commitment to [enforcing the *quo warranto* statute] without the need to take cognizance of resource constraints, changes in public opinion, or potential ramifications for other state priorities.

*Id.* at 713–14. Moreover, the Court's rationale on how New Mexico fully assigned this claim to Plaintiffs likewise demonstrates a lack of agency between New Mexico and Plaintiffs. In other words, because the *quo warranto* statute affords the State of New Mexico no right to control Plaintiffs' prosecution of this proceeding, no principal-agent relationship can exist.

## IV.   Recent Supreme Court precedent forecloses Defendant's overall argument.

Lastly, Defendant's argument is squarely foreclosed by the Supreme Court's recent decision in *Hollingsworth v. Perry*. *Id.* In that case, the Supreme Court held that private parties lack standing to assert California's interests in defending a voter enacted "proposition." *Id.* at 706. This was despite California law's clear authorization for the private party to "appear and assert" the state's interests in defending this proposition—remarkably similar to New Mexico granting private plaintiffs the right to assert a *quo warranto* action. *Id.* at 709. In reaching this conclusion, the Court also held that "[s]tates cannot alter" federal courts' limited jurisdiction "simply by issuing to private parties who otherwise lack standing a ticket to the federal courthouse." *Id.* at 715. The same principle prohibits New Mexico from conferring Plaintiffs with standing when such action would directly contravene federal standing jurisprudence.

## CONCLUSION

By seeking redress under a purely state statutory remedy for a "generalized grievance" common to all New Mexico residents, Plaintiffs do not satisfy the injury-in-fact requirement and thus lack standing to maintain this suit in federal court. *Id.* at 706.

THEREFORE, IT IS ORDERED that Plaintiffs' Motion for Remand (Doc. 10) is hereby

GRANTED and this lawsuit is hereby REMANDED to New Mexico state court.[9]


_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE

---

[9] In theory, Defendant could have argued that even if Plaintiffs lack Article III standing, the Court should *dismiss* and not remand this lawsuit because Plaintiffs nevertheless assert a federal question that belongs in federal court. However, federal courts have consistently held that remand is the proper remedy when a party lacks Article III standing, even when a federal question exists. *See Collier v. SP Plus Corp.*, 889 F.3d 894, 897 (7th Cir. 2018); *Maine Ass'n of Interdependent Neighborhoods v. Comm'r Maine Dept. of Human Res.*, 876 F.2d 1051, 1053–54 (1st Cir. 1989); *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 477–78 (1981) ("The general principle of state-court jurisdiction over cases arising under federal laws is straightforward: state courts may assume subject matter jurisdiction over a federal cause of action absent provision by Congress to the contrary or disabling incompatibility between the federal claim and state-court adjudication.").